**Joseph Mario SPATES,**
**Plaintiff-Appellee,**

v.

**John R. MANSON, Commissioner, Connecticut Department of Correction, et al., Defendants-Appellants.**

**Harry J. MAYO, Plaintiff-Appellee,**

v.

**John R. MANSON, Commissioner, Connecticut Department of Correction, et al., Defendants-Appellants.**

**No. 669, Docket 80–2241.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 3, 1981.

Decided March 3, 1981.

---

Martha Stone, Connecticut Civil Liberties Union Foundation, Hartford, Conn., for plaintiffs-appellees.

Cornelius F. Tuohy, Asst. Atty. Gen., Hartford, Conn. (Carl R. Ajello, Atty. Gen., Hartford, Conn., of counsel), for defendants-appellants.

Before FEINBERG, Chief Judge, NEWMAN, Circuit Judge, and MISHLER, District Judge.[*]

FEINBERG, Chief Judge:

This appeal is the latest chapter in a case that began in October 1976 with the filing of a pro se complaint by three prisoners incarcerated at the Connecticut Correctional Institution at Somers, Connecticut. The prisoners alleged that defendants, officials of the state correctional system, had violated their right of access to the courts, guaranteed by the Fourteenth Amendment, by failing to provide adequate legal assistance and an adequate law library at the Somers facility. The grounds of the complaint and its early procedural history in the United States District Court for the District of Connecticut, before Judge M. Joseph Blumenfeld, are well detailed in Judge Friendly's opinion in our prior consideration of this case, reported at 619 F.2d 204 (2d Cir. 1980). In that decision, we held nonappealable the district court's order that defendants submit a plan for the improvement of the law library resources and legal services at the Somers facility. In dismissing the appeal in April 1980, we expressed the hope that the district court would "give prompt consideration to the plan" once submitted, "so that an appealable order may be entered." Id. at 211.

[*] Honorable Jacob Mishler, Senior Judge of the United States District Court for the Eastern District of New York, sitting by designation.

Defendants submitted their plan in May 1980, in accordance with the district court's order. The plan, whose substantive provisions are set out in the margin,[1] dealt exclu-

1. In accordance with the order of the United States District Court in the above consolidated actions, the defendants respectfully submit the following plan for the expansion of law library services available to inmates in general population at the Connecticut Correctional Institution, Somers:

I.
LAW LIBRARY HOURS

1. The Connecticut Correctional Institution, Somers, will expand the hours of operation of its law library from approximately fifteen (15) hours per week to approximately twenty-nine (29) hours. The new library schedule will be as follows:

| | |
|---|---|
| MONDAY: | 12:30 p.m. to 2:50 p.m. |
| | 6:00 p.m. to 8:00 p.m. |
| TUESDAY: | 12:30 p.m. to 2:50 p.m. |
| WEDNESDAY: | 12:30 p.m. to 2:50 p.m. |
| | 6:00 p.m. to 8:00 p.m. |
| THURSDAY: | 12:30 p.m. to 2:50 p.m. |
| | 6:00 p.m. to 8:00 p.m. |
| FRIDAY: | 12:30 p.m. to 2:00 p.m. |
| SATURDAY: | 8:00 a.m. to 11:30 a.m. |
| | 12:30 p.m. to 3:00 p.m. |
| SUNDAY: | 8:00 a.m. to 11:30 a.m. |
| | 12:30 p.m. to 3:00 p.m. |

2. The expanded law library hours on Saturday and Sunday will be put into effect as soon as approval is received from the Office of Policy and Management, State of Connecticut, for the necessary supervisory positions and the positions are filled. This process is expected to take from 30 to 60 days.

II.
LAW BOOKS

1. The Connecticut Correctional Institution, Somers, will maintain the following books in its law library:
A. Connecticut General Statutes
B. Connecticut Law Journal
C. Connecticut Reports (1960–present)
D. Connecticut Supplement (1960–present)
E. Connecticut Circuit Court Reports (complete set)
F. Phillips' Connecticut Digest
G. Connecticut Supplement, Digest of Decisions
H. Connecticut Circuit Court Reports, Digest of Decisions
I. Connecticut Practice Book
J. United States Code Annotated:
Title 18 (including the Rules volumes)
Title 28 § 2254 (two copies)
Title 28 Rules of Appellate Procedure
Title 28 Rules of Civil Procedure
Title 42 §§ 1891–1984 (two copies)
K. Supreme Court Reporter (1950–present)
L. Federal Reporter 2d (1960–present)
M. Federal Supplement (1960–present)
N. Shepard's United States Citations
O. Shepard's Federal Citations
P. Shepard's Connecticut Citations
Q. Local Rules, United States District Court for the District of Connecticut
R. Black's Law Dictionary
S. Criminal Law Reporter (volume 10–present)
T. Palmer: Constitutional Rights of Prisoners
U. Sokol: Federal Habeas Corpus
V. Cohen: Legal Research

2. All materials listed in paragraph 1 above will be kept up to date. Volumes that become permanently lost or damaged beyond use will be replaced.

III.
PHOTOCOPYING/SUPPLIES

1. The Connecticut Correctional Institution, Somers, has a photocopy machine which is available to inmates. This machine is presently located in the library.

2. The following procedures apply to the usage of the photocopy machine:
a. Requests to photocopy materials shall be made, in writing, to the institutional librarian who will schedule the inmate to come to the library for this purpose.
b. The inmate shall be charged for the photocopying which shall be on a cost basis—currently set at .05¢ per page.
c. The cost of photocopying legal materials may be waived if the inmate has less than $5.00 in his institutional account. This free photocopying shall be limited to the duplication of documents intended as exhibits where the inmate demonstrates that: (1) more than one copy must be submitted to court; (2) the duplication cannot be accomplished by use of carbon paper; and (3) the inmate has sought assistance from the Legal Assistance to Prisoners program or the Public Defenders Office but these organizations have declined to help him with his legal problem. Reasonable exceptions to the foregoing limitation/conditions for free photocopying will be considered. A request for free photocopying should be made to the School Principal. This privilege will not be provided to an inmate who deliberately depletes his institutional account in order to obtain free photocopying.
d. Inmates will also be provided with a reasonable amount of free photocopying of legal material not available in the law library at the Connecticut Correctional Institution, Somers, but which is available at the State Library in Hartford, Connecticut. Again, the

sively with the expansion of law library services at Somers; no proposals were made with respect to the provision of legal assistance to inmates beyond the services currently available. Judge Blumenfeld referred the plan for review to Magistrate F. Owen Eagan, who had made the initial recommendations that led to the ordering of the plan. Based on Magistrate Eagan's recommendations, Judge Blumenfeld approved the plan in July 1980, with a few, relatively minor changes.[2] After the entry of final judgment in August 1980, defendants brought this appeal.

Defendants' principal contention is that the state had fully satisfied its obligations under the Constitution by providing prisoners at Somers with an adequate system of legal services, and that accordingly the state did not have a duty to expand the resources and facilities of the prison library.[3] For convenience, we may borrow Judge Friendly's description of the legal services provided at Somers:

Legal assistance is furnished prisoners at Somers under two separate programs. Three attorneys staff the Legal Assistance to Prisoners program. An attorney visits Somers once a week to meet with inmates who have arranged an interview, and approximately 15–20 interviews are conducted per week. According to an affidavit filed by the director, Legal As-

sistance to Prisoners will consider all legal claims except direct appeals from criminal convictions or the defense of pending prosecutions. It will accept all non-criminal cases unless they are likely to be fee-producing, in which case they will assist the inmate in contacting private counsel, or unless they consider the claim to be without merit, in which case they will try to explain the reasons to the prisoners.

The Connecticut Public Defender Service provides counsel for indigents in criminal prosecutions and appeals. See Conn.Gen.Stat. § 51–289–300. It will also handle state habeas corpus petitions if appointed by the Court.

619 F.2d at 207. In his recommended ruling on the motions of plaintiffs and defendants for summary judgment, dated December 22, 1978, Magistrate Eagan gave the following assessment of these programs:

It is the opinion of this court that an adequate legal assistance program does exist at the Connecticut Correctional Institution at Somers. This court has had considerable dealings with the attorneys from Legal Assistance to Prisoners and is more than satisfied with the availability of [its] services to inmates at Somers, and with [its] representation of inmates before this court. While this court recog-

---

inmate requesting this service must first seek assistance from the Legal Assistance to Prisoners program or the Public Defenders Office with regard to his legal problem. The inmate shall submit his request, in writing, to the institutional librarian.

3. Writing paper shall be available free to inmates. A pen, pencil and carbon paper shall also be available to inmates on a loan basis, to be returned following use. A request for writing material shall be made to the Housing Officer in the inmate's housing unit.

4. Free postage shall be provided to inmates for mail forwarded to judges and courts. Notarial services are available on Monday, Wednesday and Friday.

2. The court approved the plan with the following modifications:

1.) In addition to the expanded library hours required by defendants' proposal, the library should be opened for two hours each Tuesday and Friday evenings. This will pro-

vide inmates with access to the library for a total of thirty-three hours per week.

2.) Defendants will supplement the library's copy of West's Connecticut Digest by providing 1980 pocket parts, and will continue to update the Digest on a yearly basis.

3.) Inmates with seven dollars or less in their institutional accounts will be eligible for free photocopying in lieu of the proposed five dollar limit.

4.) Inmates need not seek legal assistance as a prerequisite to being allowed free use of the photocopying machine.

3. Defendants asserted at oral argument that the state had already substantially complied with the order for the upgrading of the library at Somers. They argue nonetheless that the order should be vacated because it was based on an erroneous interpretation of the law, and because of the precedent it may set for other facilities of the state prison system.

nizes the value of expanding this program in terms of staff, given the current level of availability of attorneys to inmates and the level of representation afforded inmates by Legal Assistance to Prisoners, this court will not order prison administrators to expand or establish a legal services program beyond the one currently in operation.

Both sides filed motions for reconsideration of the magistrate's recommended ruling on the motions. Defendants asserted that under *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), the existence of an adequate program of legal assistance for prisoners is sufficient in itself to discharge the state's responsibility under the Constitution to protect their right of access to courts. In *Bounds*, the Supreme Court held that the right of access "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries *or* adequate assistance from persons trained in the law." Id. at 828, 97 S.Ct. at 1498 (emphasis added). Ruling on these motions for reconsideration in an opinion dated September 21, 1979, Magistrate Eagan purported to place his earlier finding of an adequate legal assistance program in "context." Referring to the Supreme Court's instruction in *Bounds* that "[a]ny plan ... must be evaluated as a whole to ascertain its compliance with constitutional standards," 430 U.S. at 832, 97 S.Ct. at 1500, the magistrate explained that the prior finding

indicates our belief that this aspect of the Somers system is not the part that renders its inmates' access to the courts inadequate. Our statement should not be read to imply that the current system of legal assistance could, in and of itself, provide inmates with adequate access to

the courts under *Bounds*. Insofar as our finding has been interpreted in this manner, it is hereby revised.

He went on to assert, in a conclusory way, that the affidavits presented by the parties "make it clear that the Legal Assistance program at Somers does not, in and of itself, guarantee prisoners access to the courts."

Our difficulty with this "revised" conclusion arises in part from its stark contrast with the original finding, which it appears to reverse rather than revise. This difficulty is significantly exacerbated by the absence of any subsidiary factual findings or record support for the changed view. The only finding given is that the state court dismisses some habeas corpus petitions, without appointing counsel, when the petition is found frivolous or incomplete. This, the magistrate stated, "supports plaintiffs' contention that Legal Assistance to Prisoners is unable or unwilling to represent or to assist every prisoner." We disagree. In our view, this finding shows only that some prisoners file papers pro se that a court considers incomplete or frivolous. What is lacking is any indication that prisoners with nonfrivolous claims have been rejected by Legal Assistance to Prisoners in their efforts to secure the aid of a lawyer.[4] In short, we are left with no basis of support for the conclusion that the legal services program is not "in and of itself" sufficient to enable the state to pass the test of *Bounds*.

Beyond this, we are troubled by the magistrate's assertion of a "need for an up-to-date and complete library" for the use of inmates who proceed pro se. This seems to reflect an assumption that, even if the state provides adequate legal services to prisoners, complete libraries must still be

4. The record contains an affidavit from plaintiff Spates asserting that Legal Assistance refused to help him appeal an adverse grant of summary judgment in a complaint he brought pro se in the district court alleging inadequate medical care. Spates himself states, however, that the refusal to aid him was based on a determination by Legal Assistance personnel that his claim was "frivolous, had no merit and no

chance of success." Plaintiff Mayo similarly asserts that he contacted Legal Assistance "when I had a problem regarding my social security. Although they interviewed me, they declined to help me." But nothing appears to suggest that this "problem" was legally meritorious. Thus, neither assertion provides support for the magistrate's conclusion.

maintained to serve those who do not wish to be represented by counsel but elect instead to proceed on their own. We recognize, of course, that the right to represent oneself in criminal proceedings is protected by the Sixth Amendment, see *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). But this right does not carry with it a right to state-financed library resources where state-financed legal assistance is available.[5] Again, we see no adequate basis in the record thus far developed for a conclusion that the programs available to inmates at Somers do not provide the kind of support and assistance necessary to enable those who wish to act pro se to do so, whether by formal appointment of a "standby" attorney, see *United States v. West*, 557 F.2d 151, 152 (8th Cir. 1977) (per curiam), or otherwise, see, e. g., *Hohman v. Hogan*, 458 F.Supp. 669, 673 (D.Vt. 1978); *United States v. Chatman*, 584 F.2d 1358, 1360 (4th Cir. 1978).

Accordingly, we reverse the judgment of the district court and remand for further factual findings concerning the adequacy of the legal services available to inmates at Somers.

---

5. Of course a state's commendable efforts to upgrade its prison library resources, even if not constitutionally mandated when adequate legal assistance is supplied, provides a valuable supplement to legal assistance, which benefits both prisoners and courts.