# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3095
_____

United States of America

*Plaintiff - Appellee*

v.

Sonya Dubray

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Rapid City
_____

Submitted: April 14, 2020
Filed: May 7, 2020
[Unpublished]
_____

Before COLLOTON, GRUENDER, and GRASZ, Circuit Judges.
_____

PER CURIAM.

Sonya Dubray's daughter, Katrina Shangreaux, threw her two-year-old son, K.S., to the ground, kicked him repeatedly, bit him, and injured his scrotum. Dubray helped Shangreaux clean up K.S. and the scene of the crime before calling for help. Dubray also laundered K.S.'s clothes before they could be taken into evidence. After Shangreaux fled the area, Dubray met her to give her a cell phone, and Dubray made

materially false statements to the Federal Bureau of Investigation ("FBI") to help Shangreaux evade arrest. *See United States v. Shangreaux*, 770 F. App'x 772, 773 (8th Cir. 2019) (per curiam).

After he was pronounced dead at the hospital, an autopsy of K.S. revealed extensive and severe bruising over 70 percent of his body. It also revealed a rib fracture and bleeding in K.S.'s abdomen and brain. *See id.*

A grand jury returned an indictment against Dubray for tampering with evidence in violation of 18 U.S.C. § 1512(c)(1), acting as an accessory to first degree murder in violation of 18 U.S.C. § 3, making a false statement in violation of 18 U.S.C. § 1001(a)(2), and for misprision of a felony in violation of 18 U.S.C. § 4. Pursuant to a plea agreement, Dubray pleaded guilty to a superseding information indictment charging her with acting as an accessory to second-degree murder in violation of 18 U.S.C. § 3.[1]

The presentence investigation report calculated a total offense level of 27, a criminal history category of I, and an advisory sentencing guidelines range of 70 to 87 months' imprisonment, which the district court[2] adopted. Before sentencing, the Government filed a motion for an upward variance based on the nature and circumstances of the offense. At Dubray's sentencing hearing, the district court granted the motion for an upward variance and sentenced her to 114 months' imprisonment, explaining that it varied upward because the offense was "extremely serious." The district court subsequently entered a written judgment. In its statement of reasons for the written judgment, the district court indicated that it was departing, in addition to varying, from the guidelines range based on U.S.S.G. §§ 5K2.0, 5K2.1, 5K2.2, 5K2.8, and 5K2.21.

---

[1]Shangreaux pleaded guilty to second-degree murder in violation of 18 U.S.C. §§ 1111(a) and 1153.

[2]The Honorable Jeffrey L. Viken, Chief Judge, United States District Court for the District of South Dakota.

Dubray appeals, arguing first that the district court procedurally erred because the guidelines did not authorize a departure and because the district court failed to adequately explain its departure. "In reviewing a sentence for significant procedural error, we review the district court's factual findings for clear error and application of the Guidelines de novo." *United States v. Luscombe*, 950 F.3d 1021, 1031 (8th Cir. 2020) (internal quotation marks omitted).

Despite the fact that the district court indicated in its written judgment that it was departing from the guidelines, the district court stated clearly at the sentencing hearing that it was granting the Government's motion for a variance and made no mention of departures. "Where an oral sentence and the written judgment conflict, the oral sentence controls." *United States v. Foster*, 514 F.3d 821, 825 (8th Cir. 2008). The district court's written judgment, issued five days after the sentencing hearing, is therefore of no moment. "The oral pronouncement by the sentencing court is the judgment of the court." *United States v. Tramp*, 30 F.3d 1035, 1037 (8th Cir. 1994). Dubray does not contest that the district court could properly vary from the guidelines. We thus conclude that Dubray's argument fails.

Dubray next argues the district court imposed a substantively unreasonable sentence by giving improper weight to Shangreaux's conduct in beating K.S. to death. She also argues the district court did not consider her psychological evaluation and its conclusion that she had taken medication right before K.S.'s death, producing an "extreme/incapacitating" effect.

We consider the substantive reasonableness of the sentence under a deferential abuse-of-discretion standard. *United States v. Timberlake*, 679 F.3d 1008, 1011 (8th Cir. 2012). When considering whether a sentence is substantively reasonable, we "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). "Our review of the substantive reasonableness of a sentence is narrow and deferential, and it is the unusual case when we reverse a district court sentence

. . . as substantively unreasonable." *United States v. Whitlow*, 815 F.3d 430, 436 (8th Cir. 2016) (internal quotation marks omitted).

Here, the district court carefully considered the 18 U.S.C. § 3553(a) factors, including both the mitigating and the aggravating factors. The district court noted Dubray's "exemplary" personal history after committing the crime, including the fact that she had been out on pretrial release and attending a college. Despite Dubray's argument that the district court improperly weighed Shangreaux's conduct, the district court observed specifically the fact that Shangreaux, not Dubray, killed K.S. As to the psychological evaluation's conclusions, the evaluation was included in Dubray's sentencing memorandum, and it was discussed at the sentencing hearing, so we presume the district court considered it. *See Timberlake*, 679 F.3d at 1012 (presuming that the district court considered mitigating factors where the defendant raised them in his sentencing memorandum and at the sentencing hearing).

The district court also considered other factors, noting that Dubray "had a hand" in an "unspeakable" crime, that she gave a phone to Shangreaux and took "significant" steps to help her, and that Dubray helped Shangreaux despite knowing that a murder had been committed. Specifically, Dubray helped Shangreaux clean K.S.'s body and the crime scene before calling the police, helped hide evidence by laundering K.S.'s clothes, helped Shangreaux after she fled by providing her with a phone, and made materially false statements to the FBI to help Shangreaux evade arrest. Based on its review of these facts, the district court explained that it had chosen its sentence because "[s]erious offenses require serious punishment."

The foregoing demonstrates that the district court considered Dubray's circumstances and imposed a sentence that it believed was consistent with the goals of sentencing. "The district court has wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence." *United States v. Bridges*, 569 F.3d 374, 379 (8th Cir. 2009). In light of the district court's explanation of its reasons for the sentence imposed,

this is not "the unusual case" when we reverse a sentence as substantively unreasonable.  *See Whitlow*, 815 F.3d at 436.

     We affirm.

_____